STATE OF NORTH CAROLINA v. FRANKLIN HASKINS, AKA FRANK HASKINS

No. 919SC22

(Filed 17 December 1991)

1. **Evidence and Witnesses § 287 (NCI4th)— other crimes— admissibility**

    Evidence of other crimes, wrongs or acts must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant, and, if requested, must be coupled with a limiting instruction. The party offering the evidence must, if challenged, specify the purpose or purposes for which the evidence is offered. The evidence is relevant only if the jury can conclude by a preponderance of the evidence that the extrinsic act occurred and that defendant was the actor, and the trial court is required to make an initial determination of whether there is sufficient evidence that the defendant in fact committed the extrinsic act. Finally, the question of what evidence should be excluded because its probative value is outweighed by the danger of unfair prejudice is left to the discretion of the trial court. N.C.G.S. § 8C-1, Rules 104(b), 105, and 401-404(b).

    **Am Jur 2d, Evidence §§ 320, 321, 333.**

2. **Evidence and Witnesses § 369 (NCI4th)— armed robbery— evidence of another offense—not admissible for identity**

Evidence of a prior attempted robbery and shooting was not admissible in an armed robbery prosecution to show identity where the State failed to show the necessary degree of similarity between the robberies. Specifically, there were not sufficient unusual facts present in both crimes which would support a reasonable inference that the same person committed both crimes.

**Am Jur 2d, Evidence § 322.**

3. **Evidence and Witnesses § 369 (NCI4th)— armed robbery— evidence of another offense—admissible for motive**

Evidence of a prior attempted robbery and shooting was admissible in an armed robbery prosecution to show motive where motive was in issue because defendant denied his participation in the robbery; there was substantial evidence that there was an attempted robbery and shooting and that defendant was the actor; the fact that defendant was unsuccessful in the prior attempt to obtain money tends to show a motive for defendant's commission of the robbery some two hours later; there was no abuse of discretion in the determination that the probative value of the prior incident was not outweighed by the danger of unfair prejudice in light of the strong evidence of defendant's guilt in the form of positive eyewitness identification of defendant by both victims of the robbery; and the court instructed the jury that the extrinsic evidence was to be considered only for the purposes for which it was admitted.

**Am Jur 2d, Evidence § 325.**

4. **Evidence and Witnesses § 287 (NCI4th)— other crimes— admitted for multiple purposes—one purpose proper and one improper—no prejudice**

There was no prejudice in an armed robbery prosecution where the court admitted evidence of a prior attempted robbery to show identity and motive, but only the motive purpose was proper.

**Am Jur 2d, Evidence §§ 322, 325.**

APPEAL by defendant from judgments entered 26 July 1990 in GRANVILLE County Superior Court by *Judge Richard B. Allsbrook*. Heard in the Court of Appeals 7 October 1991.

*Lacy H. Thornburg, Attorney General, by Douglas A. Johnston, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia DeVine, Assistant Appellate Defender, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from judgments entered 26 July 1990, which judgments were based on jury verdicts convicting defendant of two counts of robbery with a dangerous weapon, N.C.G.S. § 14-87 (1986).

The evidence in this case is conflicting. The State's evidence tended to establish that on 25 February 1989 at approximately 10:45 p.m., an armed robbery occurred at the 7-11 Food Store (the 7-11) on Roxboro Road in Oxford, North Carolina. State's witnesses Jean Hobgood (Hobgood) and William Vaughan (Vaughan) were both working in the 7-11 that evening. Hobgood testified that two men entered the store, and that one of them, whom Hobgood identified as the defendant, shopped around while the other one, later identified as Kenneth Lyons (Lyons), stood at the door. A customer who was already in the store completed his purchases and left. According to Hobgood, the defendant then brought several items to the counter and after Hobgood rang the items up, defendant pointed a gun at Hobgood and demanded money. Hobgood testified that the defendant was in her presence for approximately fifteen to twenty minutes, that the store was well lighted, and that nothing covered the defendant's face. Vaughan testified that he had been outside the store loading groceries and that when he reentered, Lyons pointed a gun at Vaughan and demanded Vaughan's watch and ring, which Vaughan gave him. Vaughan also testified that he saw a man whom he later identified as the defendant pointing a gun at Hobgood while she emptied the contents of the cash register into a paper bag. Vaughan testified that from where he was standing he could see the defendant's side. Both Hobgood and Vaughan identified the defendant and Lyons from a photographic lineup.

The State also presented William King (King), who testified, over defendant's objection, that while on his way to make a night deposit at about 9:15 that same evening, he was shot and wounded by a man who attempted to rob him at the Southern National Bank in Butner. King testified that after he drove up to the night

depository at the bank, he heard someone outside the driver's side window of his truck yell, "This is a holdup!" King turned and saw a man standing with a "big pistol" against the truck glass. King testified that he hesitated briefly, and then as he was reaching for the bag which contained his money, the perpetrator fired a shot at King through the driver's side window, hitting and injuring King. King testified that he immediately jerked the truck into gear and sped away. According to King, no one else was present at the bank during the incident. King later identified the defendant in a photographic lineup as the man who attempted to rob him at the bank. The trial court instructed the jury that it could consider King's testimony only for the purposes of showing the identity and/or motive of the perpetrator of the 7-11 robbery. The court expressly rejected the other purposes for which the prosecutor sought to introduce King's testimony under Rule 404(b), specifically, intent, plan, scheme, system and design, and stated in response to the prosecutor's offer, "Don't try to do the overkill . . . I will not allow it for that. That sounds too much like, has the propensity to commit armed robbery."

The defendant presented the testimony of Kenneth Lyons. Lyons, who had entered a guilty plea and had been sentenced at the time of trial, testified that there were two people involved in the robbery of the 7-11 — himself and a man named Darrell Wayne. Lyons testified that the defendant was not involved. Lyons had previously implicated the defendant in the 7-11 robbery, and explained at trial that the reason that he had done so was because police officers told Lyons that the defendant had "ratted on" Lyons with regard to other robberies the two men allegedly had committed. Lyons testified that when he learned that no such statements had ever been made by the defendant, he decided to testify on defendant's behalf in order to pay defendant back for Lyons' mistake (i.e., falsely implicating defendant in the 7-11 robbery). On rebuttal, State's witness Durham police officer Robert Simmons, the investigator who interviewed Lyons, denied telling Lyons that defendant had made a statement against Lyons, and testified that he had never heard of Darrell Wayne prior to Lyons' testimony at trial.

---

The determinative issues are I) whether evidence of a prior alleged crime, an attempted robbery and shooting in Butner, is admissible to show (A) the identity of the perpetrator of the charged

STATE v. HASKINS

[104 N.C. App. 675 (1991)]

crime; or (B) the motive for defendant's alleged commission of the charged crime; and II) if admissible for only one of the two purposes, whether defendant is entitled to a new trial.

## I

[1] The admissibility of "other crimes, wrongs, or acts" evidence is determined through an application of Rules of Evidence 404(b), 402, 401, 403, 104(b), and 105. *See Huddleston v. United States*, 485 U.S. 681, 691, 99 L.Ed.2d 771, 783-84 (1988). That is, the evidence must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant, and, if requested, must be coupled with a limiting instruction. A proper application of these rules balances the State's interest in presenting the evidence of "other crimes, wrongs, or acts" against the possibility of unfair prejudice to the defendant.

### Purpose

"[O]ther crimes, wrongs, or acts" evidence is admissible only if offered for a proper purpose. A proper purpose includes, among other things, proof of a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." N.C.G.S. § 8C-1, Rule 404(b) (1988). Offering evidence solely to show "that the defendant has the propensity to commit an offense of the nature of the crime charged" does not qualify as a proper purpose. *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). If challenged, the party offering "other crimes, wrongs, or acts" evidence must specify the purpose or purposes for which the evidence is offered. *See State v. White*, 101 N.C. App. 593, 600, 401 S.E.2d 106, 110 (1991).

### Relevancy

Even if offered for a proper purpose under Rule 404(b), evidence of prior "crimes, wrongs, or acts" must be relevant, and such evidence is not relevant unless it "reasonably tends to prove a material fact in issue" other than the character of the accused. *State v. Johnson*, 317 N.C. 417, 425, 347 S.E.2d 7, 12 (1986); N.C.G.S. § 8C-1, Rule 401 (1988). Furthermore, the "other crimes, wrongs, or acts" evidence is relevant only if the jury can conclude by a preponderance of the evidence that the extrinsic act occurred and that the defendant was the actor. *See Huddleston*, 485 U.S. at 689-90, 99 L.Ed.2d at 782-83. In this regard, the trial court is re-

quired to make an initial determination pursuant to Rule 104(b) of whether there is sufficient evidence that the defendant in fact committed the extrinsic act. *See United States v. Beechum,* 582 F.2d 898, 913 (5th Cir. 1978), *cert. denied,* 440 U.S. 920, 59 L.Ed.2d 472 (1979). The judge is not required to be convinced beyond a reasonable doubt, by clear and convincing evidence, or by a preponderance of the evidence, that defendant committed the extrinsic act. *See Huddleston,* 485 U.S. at 690, 99 L.Ed.2d at 782; *Beechum,* 582 F.2d at 913. Rather, as a prerequisite to admitting the evidence, the trial court must find the evidence to be substantial. *State v. Williams,* 307 N.C. 452, 454, 298 S.E.2d 372, 374 (1983) (defining substantial evidence as "such evidence as a reasonable mind might accept as adequate to support a conclusion"); *see also Huddleston,* 485 U.S. at 690, 99 L.Ed.2d at 782-83 (trial court must determine "whether the jury could reasonably find . . . by a preponderance of the evidence that defendant committed the extrinsic act"); *State v. Stager,* 329 N.C. 278, 303, 406 S.E.2d 876, 890 (1991). If the proponent's evidence is not substantial, the trial court must, if the evidence has been presented in the presence of the jury, instruct the jury to disregard the evidence. *Huddleston,* 485 U.S. at 690, 99 L.Ed.2d at 783; *see also* N.C.G.S. § 8C-1, Rule 104(c) (1988) (hearings on admissibility of evidence shall be conducted out of the hearing of the jury when the interests of justice require); *Stager,* 329 N.C. at 303, 406 S.E.2d at 890 (proper for trial court to conduct *voir dire* hearing to determine whether evidence offered pursuant to Rule 404(b) is admissible).

## Unfair Prejudice

Although offered for a proper purpose and relevant, the evidence may nonetheless be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 403 (1988). The question of what evidence should be excluded under Rule 403 is a matter left to the sound discretion of the trial court. *Coffey,* 326 N.C. at 281, 389 S.E.2d at 56.

## Limiting Instructions

If after making the foregoing determinations the trial court concludes that the "other crimes, wrongs, or acts" evidence is admissible, the court must, upon request, instruct the jury that the evidence is to be considered only for the purposes for which it was admitted. N.C.G.S. § 8C-1, Rule 105 (1988).

STATE v. HASKINS

[104 N.C. App. 675 (1991)]

A

*Identity*

[2]  The State specifically offered evidence of the uncharged attempted robbery and shooting in Butner for the purpose of showing the identity of the perpetrator of the 7-11 robbery in Oxford. Identity is a proper purpose within the meaning of Rule 404(b).

Evidence of the attempted robbery in Butner offered to identify the defendant as a perpetrator of the Oxford robbery is relevant only if identity is at issue in the Oxford trial *and* there is substantial evidence that the defendant indeed attempted the robbery in Butner. To be relevant, there must also be "some unusual facts present in both crimes . . . [indicating] that the same person committed both crimes." *State v. Green*, 321 N.C. 594, 603, 365 S.E.2d 587, 593, *cert. denied*, 488 U.S. 900, 102 L.Ed. 2d 235 (1988) (quoting *State v. Riddick*, 316 N.C. 127, 133, 340 S.E.2d 422, 426 (1986)). Although it is not necessary that there be "bizarre and unique signature elements common to the past crimes and the crimes" the State presently seeks to prove, the similarities between the crimes must support "the reasonable inference that the same person committed both the earlier and the later crimes." *Id.* at 604, 365 S.E.2d at 593. In addition, the prior crime must not be "so remote [in time] as to have lost its probative value." *Stager*, 329 N.C. at 307, 406 S.E.2d at 893.

Here, the identity of the perpetrator of the 7-11 robbery was at issue. Although Hobgood and Vaughan identified the defendant as one of the two perpetrators of the 7-11 robbery, Lyons testified that a man named Darrell Wayne, not the defendant, committed the robbery with him. Thus, the identity of the perpetrator was the primary issue at trial. There is also substantial evidence in the record that defendant attempted the robbery and committed the shooting in Butner. William King, the victim of the Butner incident, positively identified the defendant as the perpetrator and testified at trial to that effect.

The State, however, has failed to show the necessary degree of similarity between the attempted robbery in Butner and the 7-11 robbery in Oxford. Specifically, there are not sufficient unusual facts present in both crimes which would support a reasonable inference that the same person committed both the Butner crime and the Oxford crime. There is no evidence in the record that

the method used by the perpetrator of the Butner incident was sufficiently similar to the method used to commit the robbery of the 7-11 in Oxford. The crimes occurred in different towns. Moreover, the record reveals that the Butner incident occurred on the deserted premises of a bank which was closed, involved gratuitous violence, and was committed by only one perpetrator. The robbery in Oxford was of a 7-11 food store which was open for business with customers present, no shooting took place, and two perpetrators were involved. We reject the State's contention that the fact that in both crimes neither perpetrator wore a mask, or that both perpetrators yelled a demand for money, supports a reasonable inference that the same person committed both the earlier and the later crimes. Accordingly, the evidence of the crime in Butner has no relevance with regard to proof of the identity of the 7-11 perpetrator, and is therefore inadmissible for this purpose.

B

*Motive*

[3] The State also specifically offered evidence of the attempted robbery and shooting in Butner for the purpose of showing the motive for defendant's alleged commission of the 7-11 robbery. Motive is a proper purpose within the meaning of Rule 404(b).

Evidence of the attempted robbery in Butner offered to show the perpetrator's motive for committing the robbery in Oxford is relevant only if motive is at issue in the trial and there is substantial evidence that defendant attempted the Butner robbery. When determining the relevancy of other crimes evidence offered to prove defendant's motive, the degree of similarity between the uncharged and the charged crimes is considerably less important than when such evidence is offered to prove identity. *See Beechum*, 582 F.2d at 911-12, n.15 (discussing the need for varying degrees of similarity between extrinsic act and charged crime, depending on Rule 404(b) purpose for which extrinsic act evidence is offered). Also, "remoteness in time is less significant when the prior conduct is used to show . . . motive . . . ; remoteness in time generally affects only the weight to be given such evidence, not its admissibility." *Stager*, 329 N.C. at 307, 406 S.E.2d at 893. It is required, however, that the other crimes evidence reveal some motive for the commitment of the crime charged.

Because the defendant denied his participation in the 7-11 robbery in Oxford, motive was at issue in the trial. *See Coffey*, 326 N.C. at 280, 389 S.E.2d at 55 ("where the doing of the act is in dispute" motive is always at issue). As noted earlier, there was also substantial evidence in the record that there was an attempted robbery and shooting in Butner and that defendant was the actor. Furthermore, the fact that defendant's attempt to obtain money in Butner was *unsuccessful* tends to show a motive for defendant's commission of the 7-11 robbery some two hours later.

Moreover, in light of the strong evidence of defendant's guilt in the form of positive eyewitness identification of defendant by both victims of the 7-11 robbery in Oxford, we fail to see any abuse of discretion in the trial court's determination that the probative value of the Butner incident was not substantially outweighed by the danger of unfair prejudice to the defendant. In this regard, the record reveals that the trial court did instruct the jury that the extrinsic evidence was to be considered only for the purposes for which it was admitted. Accordingly, the trial court did not err in admitting evidence of the Butner shooting and attempted robbery on the issue of defendant's motive for the 7-11 robbery in Oxford.

II

[4] This Court has not explicitly addressed the issue of prejudice to defendant when other crimes evidence is admitted for multiple purposes and, on appeal, the reviewing court determines that the evidence was improperly admitted for one of these purposes. This Court has, however, without specifically addressing the issue, held that there was no prejudicial error where at least one of the two purposes for which the prior act evidence was admitted was correct. *State v. Davis*, 101 N.C. App. 12, 18, 398 S.E.2d 645, 649 (1990); *see also United States v. Billups*, 522 F.Supp. 935, 955 (E.D. Va. 1981) (admissibility of other crimes evidence "can be upheld if it was proper for any purpose"). Although it is error to admit other crimes evidence for a purpose not supported in the evidence, the error cannot prejudice defendant when the same other crimes evidence is admitted for a purpose which is supported in the evidence. *See* N.C.G.S. § 15A-1443(a) (1988) (to establish prejudicial error, defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial"). Accordingly, the admission

of the other crimes evidence in this case for the improper purpose of proving identity does not entitle the defendant to a new trial in light of the fact that the other crimes evidence was simultaneously properly admitted for the purpose of proving motive.

No error.

Chief Judge HEDRICK and Judge EAGLES concur.